| ARTSPACE BELL SCHOOL | * | NO. 2022-CA-0404 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| TEQUILLA DOZER AND ALL | * | |
| OTHERS IN POSSESSION | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
FIRST CITY COURT OF NEW ORLEANS
NO. 2022-02180, SECTION "SECTION D"
Honorable Nadine Ramsey, Judge Pro Tem
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge Rachael D. Johnson)

Don A. Rouzan
Candace N. Newell
DON A. ROUZAN & ASSOCIATES, LLC
P. O. BOX 871687
New Orleans, LA 70187--1687


COUNSEL FOR PLAINTIFF/APPELLEE


Madeleine Vidger
SOUTHEAST LOUISIANA LEGAL SERVICES
1340 Poydras Street, Suite 600
New Orleans, LA 70112


COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED; OCTOBER 24, 2022 ORDER RENDERED MOOT**

**December 8, 2022**

RDJ
DLD
SCJ

The Appellant, Tequilla Dozier ("Ms. Dozier"), seeks review of the April 29, 2022 judgment of First City Court, in favor of the Appellee, Artspace Bell School ("Artspace"), resulting in her eviction. After review of the record in light of the applicable law and arguments of the parties, we find that the evidence does not support the judgment granting the rule for possession in favor of Artspace and, accordingly, the judgment is reversed.

## Facts and Procedural History

On April 12, 2022, Artspace filed a Rule for Possession of Premises against Ms. Dozier, who resided at the Artspace unit located at 2110 Ursuline St., apt. 205, with her three daughters, fifteen year old M.C. and six year-old twins. Attached to Artspace's Rule for Possession was its Notice to Vacate, addressed to Ms. Dozier, dated March 24, 2022. The Notice to Vacate stated that Ms. Dozier violated her lease because she harbored a fugitive inside her unit on January 13, 2022, and that the New Orleans Police Department arrested four individuals, including a member of her household (M.C.) on March 22, 2022, for the carjacking, dismemberment and murder of Linda Frickey.

1

In the Rule for Possession, Artspace stated that Ms. Dozier violated Section 18 (12) of her lease, providing:

> Any criminal activity engaged in by a resident, a household member, or a guest or other person under resident's control that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents or the landlord's employees, including any drug related criminal activity on or off the premises.

In response, Ms. Dozier filed an Exception, Answer and Affirmative Defenses, wherein she raised an exception of vagueness or ambiguity, admitted her domicile, but denied the allegations in the Rule for Possession. She also raised affirmative defenses that arrest is not proof of criminal activity and in the alternative, any violation was immaterial. Lastly, she urged the lower court to use its discretion to apply judicial control to not terminate the lease, even if warranted.

An eviction hearing was held on April 29, 2022. Ms. Dozier and Artspace's apartment manager Charisma Declouet, were the only two witnesses who testified at the hearing. Further, two pieces of evidence were introduced by Artspace: Ms. Dozier's lease and a piece of mail addressed to M.C. The lower court denied Ms. Dozier's exceptions and granted Artspace's Rule for Possession. This timely appeal followed.

Ms. Dozier raises two assignments of error: 1) First City Court erred as a matter of law in evicting her because the lease required proof that criminal activity occurred, and that activity threatened the health, safety, or peaceful enjoyment of others, which Artspace failed to meet; and 2) First City Court erroneously concluded that Ms. Dozier harbored a fugitive.

**Standard of Review**

A trial court's ruling on an eviction proceeding is subject to a "clearly wrong/manifestly erroneous" standard of review on appeal. *Bridges v. Anderson*, 16-0432, pp. 3-4 (La. App. 4 Cir. 12/7/16), 204 So.3d 1079, 1081 (citations omitted). The lessor has the burden of proving, by a preponderance of the evidence, a valid lease and that the violation of the lease provides sufficient grounds for an eviction. *200 Carondelet v. Bickham*, 17-0328, pp. 4-5 (La. App. 4 Cir. 10/25/17), 316 So.3d 955, 959 (citing *Guste Homes Resident Mgmt. Corp. v. Thomas*, 12-0386, p. 8 (La.App. 4 Cir. 5/29/13), 116 So.3d 987, 991).

"[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are reasonable." *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989) (citations omitted). If there are two permissible views of the evidence, "the factfinder's choice between them cannot be manifestly wrong." *Id.* (citations omitted).

When the trial court, however, makes one or more prejudicial legal errors that poison the fact-finding process, producing an erroneous result, then, a manifestly erroneous judgment must be reviewed under the *de novo* standard. *200 Carondelet*, 17-0328, p. 4, 316 So.3d at 958 (citing *Housing Authority of New Orleans v. King*, 12-1372, p. 5 (La. App. 4 Cir. 6/12/13), 119 So.3d 839, 842). Although Ms. Dozier asserts that a *de novo* standard of review is appropriate, we find that the clearly wrong/ manifestly erroneous standard is applicable in the matter *sub judice*.

## Criminal Activity

Ms. Dozier asserts that First City Court erred as a matter of law in evicting her because the lease required proof that criminal activity occurred, and that activity threatened the health, safety, or peaceful enjoyment of others, and Artspace failed to provide such proof. We begin our review of Ms. Dozier's first assignment of error by examining the testimony at the eviction hearing from Ms. Dozier and Ms. Declouet.

Ms. Dozier testified that she resides at 2100 Ursulines Avenue in New Orleans in apartment 205. She also testified that on January 13, 2022, teenager D.D. was arrested near her apartment unit. She testified that she did not know D.D. and had never seen him. She also stated that she did not know if M.C. knew D.D. She testified that on the same day as D.D.'s arrest, she picked up M.C. in front of the apartment unit, to take her to a 1:00 p.m. appointment. Ms. Dozier testified that she observed "commotion was already going on" when she picked up M.C. She explained that after picking up M.C. in her vehicle, she made the block where she was stopped at a red light in traffic. While she was stopped, her vehicle was approached by the police, who handcuffed all occupants. She testified that there were no marked police cars in the area. The police subsequently released them, and they left the area.

Ms. Dozier further testified that she was unaware of any mail correspondence between her daughter and D.D. She was then presented with a piece of U.S. postal mail by counsel for Artspace, who asked her to read into the record the names of the addresser and addressee. Ms. Dozier testified that the

piece of mail was sent by D.D. from 1100 Milton Street in New Orleans, and was addressed to M.C. at 2116 Ursulines Ave, apartment 205. Ms. Dozier testified she did not recognize the piece of mail.

When asked where her daughter was on the date of the hearing, Ms. Dozier testified that M.C. was arrested for the second degree murder and is being charged as an adult. She further testified that M.C. is currently located at 1100 Milton Street, which she identified as the Juvenile Correctional Center.[1]

During her testimony, she further identified her lease agreement with Artspace. She explained that she agreed to the lease terms, including Section 18, entitled Termination of Lease. She also testified that if M.C. is released, she would live with her (M.C.'s) father and would not return to the Artspace unit.

Ms. Dozier related she currently lives in the unit with her six year-old twin daughters. She explained that if her HUD subsidized housing was terminated, she would be homeless. She testified that she had one prior violation for disturbing the peace, which involved someone she knew who was under the influence kicking in her door and subsequently being arrested.

On cross examination, Ms. Dozier testified that the police have never been to her Artspace unit and that no one in her household has been arrested at her unit. She testified she has never been arrested for harboring a fugitive on January 13, 2022 and the police have not spoken with her about harboring a fugitive on that date.

Ms. Declouet, as mentioned above, is an Artspace employee. She testified that she has been the property manager with the Artspace since January of 2022, but has been employed by McCormack Baron Management, the company that

---

[1] The actual name of the facility is the Juvenile Justice Intervention Center ("JJIC").

manages Artspace, for five years. Ms. Declouet testified that as apartment manager she keeps a file on each of the residents of Artspace, which includes their lease, infractions, application materials, and mis-delivered or undeliverable mail.

At the hearing, counsel for Artspace presented her with a piece of undeliverable mail, which she identified as being addressed to M.C. at 2116 Ursulines St., Apartment 205, from D.D. at 1100 Milton St. She testified the mail was undeliverable because M.C. resides at 2110 Ursulines St., Apartment 205. The piece of mail, she related, was delivered to her office by the United States Postal Service. She explained that M.C. is the only person with that name living at the complex.

Additionally, Ms. Declouet testified that she has met Ms. Dozier, who has a project-based voucher and is a HUD tenant. She further testified that she did not know of any crime or criminal activity that took place in Ms. Dozier's unit. She related witnessing Ms. Dozier and M.C. being detained and handcuffed on the property, but outside of the building, on January 13, 2022.

When cross-examined about the basis for initiating the eviction, Ms. Declouet testified that police officers came to the unit and her office to inquire about M.C., with whom she was unfamiliar at the time because she had just started her job at Artspace. She testified that the officers told her they had footage from Instagram Live of D.D. inside of Ms. Dozier's unit in a bed.[2] She stated she does not have any personal knowledge of criminal activity involving Ms. Dozier and her family.

---

[2] Counsel for Ms. Dozier objected to Ms. Declouet testifying to hearsay, explaining that counsel did not inquire about the police. Counsel proceeded to ask another question of Ms. Declouet. The lower court did not rule on the objection.

Lastly, Ms. Declouet testified there was a prior violation that occurred in the Dozier household on January 6, 2021; however, she was not the property manager at the time it occurred. She explained the January 6, 2021 incident involved a disturbance, physical altercation and damage to property.

In light of the foregoing testimony and evidence presented, it is unclear whether Ms. Dozier knew D.D. Nevertheless, the testimony and evidence reflect that M.C. and D.D. knew each other. D.D. knew where M.C. lived and was arrested in the vicinity of her apartment complex, according to Ms. Dozier's testimony. He attempted to write M.C. at Artspace unit, but incorrectly addressed the mail. While Ms. Dozier testified that M.C. and D.D. were arrested, we note that no evidence was introduced at the hearing establishing: the teenagers were arrested; what they were arrested for; and that D.D. escaped from the JJIC and took refuge in Ms. Dozier's unit, as argued by counsel for Artspace.

Moreover, at the eviction hearing, the Court questioned counsel for Artspace whether an arrest is proof of criminal activity. Counsel argued that "an arrest reflects the accusation of criminal activity, but this does not require a conviction. It makes it very clear that it doesn't require a conviction." However, the lease at issue ***does not*** make it "clear" that a conviction is not required. The lease is silent as to whether an arrest or a conviction is required to establish that criminal activity occurred. The lease, as previously stated, only prohibits residents from being involved in criminal activity without providing any further definitions or parameters.[3]

---

[3] The only other section of the lease that defines "criminal activity" is contained in Section 14 of the lease, entitled *Obligations of the Resident*, which explains that "criminal activity" encompasses drug-related activities and provides in pertinent part:

Artspace argued that a conviction is not required by the lease because convictions take years to occur. Artspace further averred Ms. Dozier's alleged right to remain in the unit until both teenagers are convicted should not prevail over the suffering experienced by other tenants. However, the absence of any language in the lease as to what is required to establish "criminal activity" is an ambiguity that must interpreted in Ms. Dozier's favor. "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La. C.C. 2056; *see Pollard v. Schiff*, 13-1682, p. 10 (La. App. 4 Cir. 2/4/15), 161 So.3d 48, 55) [holding that, under Louisiana law, ambiguous clauses are construed against the drafter].

Moreover, Artspace argued that the peaceful enjoyment of the premises by the other residents was violated due to the arrests of M.C. and D.D., causing the Artspace residents to be fearful and uncomfortable. There was no testimony presented, however, that Artspace residents felt threatened by these events nor that they even knew of M.C.'s arrest in connection with Ms. Frickey's murder.

Artspace contends as lessor it "warrants the lessee's peaceful possession of the leased thing against any disturbance caused by a person who asserts ownership,

---

Resident shall be obligated as follows, and shall ensure that Resident's household members, visitors and guests obey the following:

m. To provide that the Resident, any member of the Resident's household, any guest or any other person under the Resident's contro*l, shall not engage in criminal activity, including, but not limited to, drug-related criminal activity, on or off the premises (Drug-related criminal activity means the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute, or use of, a controlled substance) and shall not display, use, or possess firearms (operable or in inoperable) or other weapons as defined by the laws of the State in the Unit or on the premises*. [Emphasis added].

8

or right of possession of, or any other right in the thing." La. Civ. Code art 2700. It maintains that because it owes this obligation it is essentially absolved from having to present "statements from neighbors about disturbance to the peaceful enjoyment were not necessary in the instance of a dismemberment and murder which had news coverage for several weeks." We disagree. As stated above, as lessor, Artspace had the burden of proving, by a preponderance of the evidence, a valid lease and that the violation of the lease provides sufficient grounds for an eviction.

The lower court evicted Ms. Dozier at the conclusion of the hearing, reasoning there was a disturbance "enough to threaten and to disturb the peaceable possession of the tenants." Nevertheless, Artspace presented no evidence or testimony of "criminal activity" occurring or that there was a threat posed by M.C. to other tenants. Indeed, there was no evidence presented or testimony adduced that the other Artspace tenants were even aware that a fellow tenant was arrested for Ms. Frickey's murder. The testimony only shows that Ms. Declouet was aware of M.C.'s alleged criminal activity and her involvement with D.D.

In *Guste Homes Resident Mgmt. Corp. v. Thomas,* 12-1493, 12-386 (La. App. 4 Cir. 5/29/13), 116 So.3d 987, First City Court granted a public housing tenant's motion for involuntary dismissal, thereby denying the rule of possession. On appeal, this Court held the tenant, who was convicted of misdemeanor theft, could not be evicted from his public housing unit because no showing had been made of the connection between his off-site criminal activity and the threat to the health, safety or peaceful enjoyment of the premises of other residents. *Id.*, 12-1493, pp. 7-8, 116 So.3d at 991-92. The lessor, Guste Homes Resident Management Corporation ("Guste"), presented evidence at the eviction hearing of the tenant's conviction for misdemeanor theft and the testimony of the Guste site

9

manager. The manager, however, was unable to explain during her testimony how the tenant's behavior threatened the other tenants. *Id.*, 12-1493, pp. 6-7, 116 So.3d at 991.

Similarly, we find Artspace failed to establish criminal activity occurred under the lease and that M.C.'s arrest presents an actual threat to the health, safety and peaceful enjoyment of the premises of the other tenants based on the record. It is unclear whether an arrest constitutes "criminal activity" under the lease, which does not define the term.[4] "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La. Civ. Code art. 2056. The lease at issue is drafted by Artspace. "A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." *Id.* Additionally, although counsel for Artspace represented that tenants are afraid and argued that M.C.'s alleged activities present a threat, counsel's argument is not evidence. *Houston v. Chargois*, 98-1979, p. 3 (La. App. 4 Cir. 2/24/99), 732 So. 2d 71, 73.

A judgment of eviction must be reversed when the lessor fails to prove the legal ground upon which the lessee should be evicted. *Hous. Auth. of New Orleans v. King*, 12-1372, p. 4 (La. App. 4 Cir. 6/12/13), 119 So. 3d 839, 842 (citing *Kenneth and Allicen Caluda Realty v. Fifth Business, L.L.C,* 06-608, p. 4 (La.App. 5 Cir. 12/27/06), 948 So.2d 1137, 1138).

---

[4] Artspace does not allege or present evidence that "criminal activity" is defined in any of the seven documents identified as being attached to Ms. Dozier's lease, as listed in Section 28. These documents are not included in the record.

We pretermit discussion of the remaining assignment of error, having found Artspace failed to carry its burden of proof as to whether M.C. presented a threat to the safety of other Artspace residents.

Lastly, on October 24, 2022, this Court ordered supplementation of the record with the aforementioned two exhibits introduced at the eviction hearing. However, the October 24, 2022 order is rendered moot because the exhibits were included in the record.

## DECREE

For the foregoing reasons, the April 29, 2022 judgment of First City Court is reversed. Furthermore, the October 24, 2022 order of this Court is rendered moot.

**REVERSED; OCTOBER 24, 2022 ORDER RENDERED MOOT**